# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

RUTH STINSON, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

BEST BUY CO., INC.,

       Defendant.

Case No. 0:18-cv-00295-JNE-KMM

**REPORT AND
RECOMMENDATION**

---

Jeffrey D. Kaliel and Sophia Goren Gold, Kaliel PLLC; Jeffrey Miles Ostrow, Kopelowitz Ostrow PA; Christopher J. Moreland and Melissa S. Weiner, Halunen Law; counsel for plaintiff

Daniel J.T. McKenna, Jonathan M. Bye, Kristin D. Kanski, and Sarah Pruett, Ballard Spahr LLP, counsel for defendant

---

       This matter is before the Court on Defendant Best Buy's Motion to Compel Individual Arbitration and to Stay Proceedings. [ECF No. 17.] In its motion, Best Buy asks the Court to issue an order compelling individual arbitration of Plaintiff Ruth Stinson's claims pursuant to an arbitration agreement Ms. Stinson entered with Citibank. Best Buy also asks the Court to stay all further proceedings pending completion of any individual arbitration. [*Id.*] For the reasons that follow, the Court recommends that Best Buy's motion be granted.

## BACKGROUND

       Ms. Stinson alleges that she was misled by Best Buy's in-store marketing of a "no interest" credit card for use in purchasing appliances and she seeks to represent a class of other individuals who experienced the same misleading promotion. Best Buy

argues that Ms. Stinson, and indeed all similarly situated persons, actually applied for and received a credit card from Citibank; as part of their application they agreed to arbitrate any disputes and they waived any right to pursue relief on a class-wide basis. Best Buy argues that, although Citibank is not a party to this case and Best Buy is not a party to the contract, Best Buy is entitled to enforce the individual arbitration agreement.

### The Class Action Complaint

Ms. Stinson alleges that she visited a Best Buy retail store in Michigan and purchased a washer and dryer for $947.82 on October 31, 2015.[1] [*See* Compl. ¶¶ 33, 36, ECF No. 1.] She claims that she decided to make the purchase because a Best Buy salesperson told her about a promotional offer involving "0% interest" or "no interest" on certain purchases. [*See id.* ¶ 34, 38.] "The Best Buy salesperson informed [Ms. Stinson] that if she qualified, she would receive 18 months with no interest on her purchase." [*Id.* ¶ 34.] The same Best Buy salesperson allegedly urged her to apply for "store branded credit," and in reliance on the "representation that she would be charged no interest on her purchase for a period of 18 months," Ms. Stinson applied for credit. [*Id.* ¶ 35.] It took Ms. Stinson approximately 5 minutes to complete a credit application, which "was approved within seconds. . . ." [*Id.* ¶ 36.] Once her application was approved she made the $947.82 purchase. [*Id.*]

However, Ms. Stinson alleges that the Best Buy salesperson did not describe to her the true terms on which she was extended credit. She was never informed that "if she failed to pay off the entire balance of the account before the end of the 18-month period, she would be required to pay interest on the entire purchase price retroactive to the initial date of purchase." [Compl. ¶ 34.] The Best Buy salesperson also did not:

---

[1]    The Complaint does not identify what Ms. Stinson purchased other than "home appliances," [Compl. ¶ 7], but as is made clear in other submissions relevant to the motion to compel arbitration, she bought a washer and dryer that day.

(a) explain the difference between a true "0% interest" or "no interest" promotion and a deferred-interest promotion; (b) inform Plaintiff that Best Buy's promotion was not a true "0% interest" or "no interest" promotion; (c) inform Plaintiff that if she failed to pay off the entire balance of her purchase by the end of the 18 month promotion she would be assessed interest on the full purchase price ($947.82) back to the initial date of purchase; (d) provide Plaintiff with a written copy of the full credit terms; or (e) offer Plaintiff the chance to review the full credit terms.

[*id.* ¶ 37.] Because the promotion was described as a "0% interest" or "no interest" deal, but was truthfully a deferred-interest promotion, Ms. Stinson claims that Best Buy's marketing of the promotion was misleading. [*See id.* at ¶¶ 1–12, 18–32 (generally describing advertising deferred-interest credit arrangements as "no interest" promotions, how consumers are misled by such promotions, and how consumers are harmed when hit with unexpected credit card interest payments at the end of the promotional period).]

Ms. Stinson asserts that if Best Buy had told her "about the true nature of its purported '0% interest' or 'no interest' promotion, [she] would not have made the subject purchase and/or would not have enrolled in the '0% interest' promotion." [Compl. ¶ 38.] Even though she made timely payments and significantly reduced the principal balance she owed during the 18-month period after her purchase, Ms. Stinson was unable to pay off the entire balance and "was hit with $309.54 . . . in retroactive interest when [the promotional period] expired." [*Id.* ¶ 39.]

Because Ms. Stinson claims that what happened to her affected a significant number of other people in similar ways, she seeks to represent a "National Class" and a "Michigan Subclass" in this case. The National Class and Michigan Subclass are respectively described in the Complaint as follows:

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on store-issued credit and were later charged retroactive, lump-sum interest on the full purchase amount.

3

(the "National Class"); and

All persons in the State of Michigan who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on store-issued credit and were later charged retroactive, lump-sum interest on the full purchase amount.

(the Michigan Subclass).

[Compl. ¶ 41.]

Ms. Stinson's Complaint ultimately identifies four separate causes of action and seeks a variety of relief on behalf of herself and the proposed classes. She alleges that Best Buy is liable to the National Class for: (1) fraud and fraudulent inducement [Compl. ¶¶ 56–63]; (2) negligent misrepresentation or omission [*id.* ¶¶ 64–75]; and (3) unjust enrichment [*id.* ¶¶ 90–97]. She also alleges that Best Buy is liable to the Michigan Subclass for violating several provisions in the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903. [*Id.* ¶¶ 76–89.] Based on these tort and statutory theories, Ms. Stinson and the classes seek: a declaratory judgment; restitution; an accounting and disgorgement of ill-gotten gains; actual damages; a prospective injunction prohibiting Best Buy from engaging in the same conduct in the future; punitive and exemplary damages; pre-judgment and post-judgment interest; and costs, disbursements, and attorneys' fees, as well as any other relief deemed just and proper. [*Id.*, Prayer for Relief ¶¶ 1–9.]

Notably, there is no mention of Citibank, a credit card agreement between Citibank and Ms. Stinson, an arbitration provision, or a class-action waiver anywhere in the Complaint.

### *The Arbitration Agreement*

Although Ms. Stinson's Complaint does not reference Citibank or its role in this case, Best Buy has introduced several facts into the record before the Court relevant to its motion. Best Buy has provided this information through the

declarations of two of its own employees as well as the declaration from a Citibank representative.

The Best Buy store Ms. Stinson visited on October 31, 2015 was in Holland, Michigan. There, she applied for a Citibank My Best Buy Credit Card. [Decl. of Dan Olstad ("Olstad Decl.") ¶ 17, ECF No. 20; Decl. of Terri Montgomery ("Montgomery Decl.") ¶ 8 & Ex. 2, ECF No. 22.] Best Buy customers can apply for this sort of Citibank credit card in Best Buy stores through an electronic process. [Olstad Decl. ¶¶ 6–8.] Best Buy personnel promote the Citibank My Best Buy Credit Card accounts and facilitate the in-store application process. [Olstad Decl. ¶ 4.] If the application is approved, Citibank opens a credit card account, which is governed by a card agreement. [Montgomery Decl. ¶ 6.]

A Best Buy customer applying for a Citibank My Best Buy Credit Card receives a Terms and Conditions pamphlet that includes the terms of the credit card agreement. [Olstad Decl. ¶ 7.] The in-store electronic credit application process requires a customer to enter a four-digit code during the application process to ensure that the customer has received a copy of the Terms and Conditions applicable to the Citibank credit account. [*See* Olstad Decl. ¶¶ 8–13.] If the customer does not enter the four-digit code, the application will not be sent to Citibank. [Osltad Decl. ¶ 9, 14.]

Ms. Stinson entered a four-digit terms code in connection with her application. [Olstad Decl. ¶ 10.] She also signed her name certifying that she understood she was applying for a Best Buy Credit Card issued by Citibank and that she had read the Terms and Conditions and the Card Agreement. [Olstad Decl. ¶ 15; *see also* Montgomery Decl., Ex. 1.] Citibank approved Ms. Stinson's application and issued a Best Buy Visa branded credit card to her, which could be used anywhere Visa is accepted. [Montgomery Decl. ¶ 5; Olstad Decl. ¶ 17.] After her application was approved, she used the credit card to purchase a washer and dryer from Best Buy pursuant to an 18-month financing promotion. [Olstad Decl. ¶ 18.]

The "Terms and Conditions of Offer" that was provided to Ms. Stinson also included a "Card Agreement." [Montgomery Decl., Ex. 1 at 5.] The Card Agreement includes the following arbitration and class-action-waiver provisions:

### ARBITRATION

*PLEASE READ THIS PROVISON OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

[Montgomery Decl., Ex. 1 at 15–16, 43–44[2] (capitalization, italics, and bolding in original).]

The Card Agreement also gives Citibank the right to change the agreement's terms if Citibank gives Ms. Stinson notice and the opportunity to opt out of the changes. [Montgomery Decl., Ex. 1 at 14, 42.] About a year after Ms. Stinson applied and was approved for the My Best Buy Citibank Credit Card, Citibank sent her an Amended Card Agreement along with one of her monthly billing statements. [Montgomery Decl. ¶ 10, Ex. 4.] Ms. Stinson did not opt out of that agreement through any affirmative correspondence; instead, she continued using her Citibank credit card after receiving the notice of changes to the Card Agreement. [Montgomery Decl. ¶¶ 11–12 and Exs. 3 & 5.] The Amended Card Agreement provides that failure to close the account within 30 days after receiving the credit card or further use of the card makes the terms of the agreement binding on the card user. [Montgomery Decl., Ex. 4 at 9.]

Like the original Card Agreement, the Amended Card Agreement also includes an arbitration provision. The Amended Card Agreement's arbitration provision similarly advises the card holder (Ms. Stinson) to read the provision carefully and that disputes may be resolved by arbitration rather than in a court. [Montgomery Decl.,

---

[2]    Both the Card Agreement and the Amended Card Agreement contain original page numbers at the bottom of each page of dual columns. When identifying the location of material in these agreements, the Court cites to these original page numbers rather than the numbers appearing at the top of the page, which are generated by the ECF system.

Ex. 4 at 14.] It further provides that its terms "shall be interpreted in the broadest way the law will allow." [*Id.*] The "Covered Claims" section states

- *You* [Ms. Stinson] *or we* [Citibank] *may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

[*Id.* (italics and bold in original).]

Further, the arbitration provision in the Amended Card Agreement provides:

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-part claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent representative or an affiliated/parent/subsidiary company.

[*Id.*] And like the class-action waiver in the original Card Agreement, the Amended Card Agreement provides that "Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis." [*Id.*] Finally, the Amended Card Agreement provides that "federal law and the law of South Dakota, where we [Citibank] are located, govern the terms and enforcement of this Agreement." [*Id.* at 15.]

# DISCUSSION

Based on the arbitration and class-action-waiver language in the Amended Card Agreement, Best Buy argues that Ms. Stinson should be required to arbitrate her claims individually rather than litigate them in federal court as part of a class action. Best Buy asserts that even though it is a non-signatory to the Amended Card Agreement, it nevertheless has standing to enforce the individual arbitration provision. Moreover, Best Buy argues that regardless of how Ms. Stinson has characterized her claims in her proposed class action Complaint, they are the type of claims that fall within the applicable arbitration clause.

## I.    Summary Judgment Standards Apply

Before analyzing the merits of Best Buy's effort to enforce the arbitration clause at issue, the Court must first determine the applicable legal standard. Though in its motion to compel arbitration Best Buy does not specify a Federal Rule of Civil Procedure under which the motion was filed, it asserts that summary judgment standards should apply. [*Compare* Def.'s Mot. (citing no Fed. R. Civ. P.), ECF No. 17, *with* Def.'s Mem. at 13 n.6 ("Motions to compel arbitration that are accompanied by attached exhibits and declarations are to be treated under summary judgment standards."), ECF No. 19.] Ms. Stinson does not disagree with the application of this legal lens, and the Court concludes that the summary judgment framework is appropriate.

"Rule 12(b)(6) or Rule 56 motions are the appropriate means for parties seeking to compel arbitrations." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Of course, neither the traditional summary judgment standard nor that applied to a motion to dismiss for failure to state a claim is a perfect fit. *City of Benkelman, Nebraska v. Baseline Engineering Corporation*, 867 F.3d 875, 881 (8th Cir. 2017) ("To be sure, the motion [to compel arbitration] does not sit squarely on all fours with either rule."). Where the parties have submitted matters outside the pleadings, such as affidavits and exhibits, on a motion to compel arbitration the Eighth Circuit has found that such a

motion should be considered using summary judgment standards. *Id.* (observing that "both parties submitted matters outside the pleadings, which the district court considered when granting the motion [to compel arbitration]," and citing Fed. R. Civ. P. 12(d), which provides that if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment); *see also Nebraska Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014). "Whether or not parties entered into an arbitration agreement falls to judicial determination," and although the FAA does not clearly delineate the evidentiary standard applicable to a motion to compel arbitration, "courts have analyzed the issue using a summary judgment standard—viewing the evidence in the light most favorable to the non-moving party." *Schwalm v. TCF National Bank*, 226 F. Supp. 3d 937, 940 (D.S.D. 2016) (citing *Neb. Mach. Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014)).

Best Buy submitted declarations and exhibits in support of its motion to compel arbitration. Although Ms. Stinson submitted no evidence of her own in opposition to the motion, she made no argument that the Court's consideration of such matters would be procedurally improper, and the Court sees no basis for such an argument. Accordingly, based on the caselaw cited above, the Court will apply the summary judgment standard to Best Buy's motion to compel arbitration.

## II.    Analysis: The Arbitration Agreement

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA establishes a federal policy favoring arbitration of disputes. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). In considering whether to compel arbitration, a court must ask: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of the arbitration agreement at issue. *Parm v. Bluestem Brands, Inc.*, No. 15-cv-3437 (JRT/BRT), No. 16-cv-624 (JRT/BRT),

2017 WL 1193993 (D. Minn. Mar. 30, 2017), *appeal docketed*, No. 17-1931, No. 17-1932 (8th Cir. May 2, 2017).

In this case, the Court first addresses whether Best Buy can even enforce the arbitration agreement at issue. The Court will then turn to whether there is a valid agreement to arbitrate and whether the dispute alleged by Ms. Stinson in this case falls within that agreement. For the reasons that follow, the Court concludes that the answer to all of these questions is "yes": Best Buy can enforce the arbitration agreement; the arbitration agreement is valid; and the dispute raised in Ms. Stinson's complaint falls within the scope of the arbitration agreement. Accordingly, Best Buy's motion should be granted.

## A.    Best Buy Can Enforce the Arbitration Agreement

In "some limited circumstances . . . a nonsignatory party may enforce an arbitration provision," *Alltel Comm'ns, LLC v. Oglala Sioux Tribe*, No. 10-cv-5011-JLV, 2010 WL 1999315, at *9 (D.S.D. May 18, 2010), but the parties disagree about whether this case presents such a circumstance. Best Buy argues that it is entitled to enforce the arbitration agreement because three traditional principles of state contract law[3] allow it to do so:

(1) Best Buy claims to be a third-party beneficiary of the card agreements;

(2) Best Buy asserts that equitable estoppel prevents Ms. Stinson from avoiding the arbitration clause because her claims are inextricably intertwined with that contract; and

(3) Best Buy contends that it was acting as Citibank's agent for the limited purpose of promoting the credit card offer at issue.

---

[3]    The parties do not dispute that South Dakota law is applicable to resolution of these questions. "The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

Def.'s Mem. at 16–26.] Ms. Stinson argues that none of these doctrines applies. [Pl.'s Opp'n at 11–30.] The Court concludes that Best Buy may invoke the arbitration provision at issue here under principles of equitable estoppel.[4]

### Equitable Estoppel

Under South Dakota's principles of equitable estoppel, a signatory to an agreement can be compelled to arbitrate against a non-signatory in two circumstances. First, the doctrine is triggered when "all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).[5] Second, equitable estoppel applies when the signatory asserts "claims arising out of agreements against nonsignatories to those agreements without allowing those defendants also to invoke the arbitration clause contained in the agreements." *Id.* (alterations and quotations omitted) (quoting *A.L. Williams & Assoc., Inc. v. McMahon*, 697 F. Supp. 488, 494 (N.D. Ga. 1988)).

Eighth Circuit cases and district court cases from within the circuit that do not expressly rely on South Dakota law articulate a similar test for the application of equitable estoppel. For example, in *CD Partners, LLC v. Grizzle*, the court explained

---

[4]    Based on the conclusion that equitable estoppel allows Best Buy to invoke the arbitration clause here, the Court need not reach the questions of whether Best Buy should be permitted to do so under third-party-beneficiary or agency theories.

[5]    Ms. Stinson argues that to compel arbitration under South Dakota's equitable estoppel precedent, Best Buy must point to some allegation of "concerted conduct" or misconduct between Citibank and Best Buy. [Pl.'s Mem. at 26–27.] It certainly seems likely that the relationship between Best Buy and Citibank regarding the credit card promotion was substantially interdependent and concerted. However, because Best Buy relies on the second avenue for application of equitable estoppel, which does not require a showing of concerted conduct, the Court need not explore this issue.

12

that under the principles of equitable estoppel, also known as "alternative estoppel," a nonsignatory can enforce an arbitration clause if the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." 424 F.3d 795, 798 (8th Cir. 2005). Similarly, in *Alltell Comm'ns, LLC v. Oglala Sioux Tribe*, the court explained:

> Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of the same agreement.

*Alltel*, 2010 WL 1999315, at *9 (quoting *PRM Energy Systems, Inc. v. Primenergy, LLC*, 592 F.3d 830 834 (8th Cir. 2010).

Here, though Ms. Stinson carefully avoids mentioning the Amended Card Agreement in her class-action Complaint, her fraud, negligent misrepresentation, statutory, and unjust enrichment claims all presume the existence of that agreement with Citibank. Each of these claims depends upon Ms. Stinson's allegations that she was told she would pay "no interest" only later to have been hit by Citibank with a deferred-interest payment on the full purchase price of the appliances she bought. Even taking the evidence before the Court in the light most favorable to Ms. Stinson, the only way she can demonstrate that she was unlawfully charged a deferred-interest payment as alleged would be to use the terms of the credit card agreement with Citibank from which the charges emanated and the bill issued to her as a result of that agreement. Stated differently, she can only show that Best Buy made a misrepresentation about the credit arrangement it promoted by showing that she was charged interest under the agreement she made with Citibank. Ms. Stinson offered no evidence, and indeed did not even make allegations, that would allow the Court to conclude that the interest charges she incurred flowed from any source other than the terms governing her Citibank credit card account, nor from any actor other than Citibank. *See Parm*, 2017 WL 1193993, at *13 (concluding that equitable estoppel principles permitted an online retailer to enforce an arbitration clause for certain

claims where those claims challenged "the legality of practices memorialized" in the agreements containing the arbitration provision).

The degree to which Ms. Stinson's claims against Best Buy are inextricably intertwined with the terms of the Amended Card Agreement is also demonstrated by the purported classes of similarly situated individuals she seeks to represent in this litigation. Both the National Class and the Michigan Subclass are composed, not of people who heard Best Buy's allegedly false promises, but of those who "made purchases on store-issued credit and were later charged retroactive, lump-sum interest on the full purchase amount." [Compl. ¶ 41.] The common theme uniting Ms. Stinson and the putative class members is that all were allegedly charged retroactive, lump-sum interest by Citibank on a full purchase price despite having seen or been told about Best Buy's marketing for "no interest" financing. Ms. Stinson and the putative class members are seeking to obtain a remedy from Best Buy for interest charges that they incurred from credit card accounts with Citibank.

In an effort to avoid the doctrine of equitable estoppel to this matter, Ms. Stinson relies heavily on two out-of-circuit cases that ultimately declined to allow a non-signatory to enforce an arbitration agreement, but neither carries the day. First, Ms. Stinson's reliance on *White v. Sunoco, Inc.*, 870 F.3d 257 (3rd Cir. 2017), is unavailing. [Pl.'s Opp'n at 25.] Mr. White alleged that he signed up for a rewards credit card based on Sunoco's promise that he would receive a 5-cent per gallon discount on gasoline purchases at Sunoco stations, but contrary to its representations, Sunoco did not apply the discount. 870 F.3d at 260. Like Ms. Stinson, Mr. White claimed fraud and fraudulent inducement, negligent misrepresentation, unjust enrichment, and violation of a state deceptive trade practices statute. *Id.* Applying South Dakota law, the Third Circuit found that Sunoco, which was a non-signatory to the credit card agreement containing an arbitration provision, could not compel arbitration under principles of equitable estoppel because "the claims that White asserts against Sunoco do not rely on any terms in the Card Agreement," but on a promise made entirely by Sunoco. *Id.* at 265. "[E]ven if the Card Agreement contained

14

entirely different terms—for example, about the interest rate, credit limit, billing address[]—that would not have any bearing on the validity of White's claims against Sunoco regarding its allegedly fraudulent promise to discount 5 cents per gallon of fuel at Sunoco locations." *Id.* The same cannot be said here. If the Amended Card Agreement contained entirely different terms about the computation of interest, Ms. Stinson's claims would be quite different as well. Stated differently, the only way to assess whether Best Buy's alleged representations about the "no interest" financing were false or misleading is by reference to the terms of the Amended Card Agreement under which the interest was calculated and applied.

*Murphy v. DirecTV*, 724 F.3d 1218 (9th Cir. 2013), is similarly inapposite. [Pl.'s Opp'n 22–23.] In *Murphy*, consumers claimed that Best Buy misrepresented the terms on which they would be receiving satellite television equipment. Best Buy allegedly told them that receivers and digital video recorders for DirecTV's service were for sale, but Best Buy and DirecTV actually "considered the transaction to be a lease." *Id.* at 1223. Applying California law,[6] in *Murphy* the Ninth Circuit determined that Best Buy could not enforce an arbitration clause in the plaintiffs' agreements with DirecTV under principles of equitable estoppel because those customer agreements were "factually irrelevant to Plaintiffs' claims against Best Buy, which charge misrepresentations at the point of sale." 724 F.3d at 1230. In *Murphy*, the court reasoned that the agreement was not a "necessary precondition for Plaintiffs' claims" because the contract "merely provides that, *if* a customer is leasing his DirecTV

---

[6]    In *Murphy*, the Ninth Circuit also based its conclusion that Best Buy could not use equitable estoppel to enforce the arbitration clause, in part, on the requirement under California law that a plaintiff's allegations had to assert a violation of a duty, obligation, term, or condition imposed by the relevant agreement. 724 F.3d at 1230; *see also id.* at 12301 n.7 (discussing California cases permitting non-signatory enforcement under equitable estoppel principles where the plaintiff asserted "contract-based causes of action"). Eighth Circuit cases appear to have adopted a broader articulation of equitable estoppel, allowing the nonsignatory to enforce an agreement "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement . . . ." *CD Partners*, 424 F.3d at 198 (internal quotations omitted).

equipment, it is non-transferable and must be returned upon cancellation," but it did not control whether the equipment was in fact purchased or leased. *Id.* at 1230 (emphasis in original).

Of course, *Murphy* is not only from another Circuit, but it applies California contract principles rather than those of South Dakota. But it is factually distinguishable as well. The difference between *Murphy* and this case is that here Ms. Stinson's credit agreement is a necessary precondition of her claims. The only inference that can be drawn from this record is that she was charged the allegedly unlawful interest by Citibank pursuant to her contract. Although Ms. Stinson asserts that Best Buy made misrepresentations at the point of sale in this case, her agreement with Citibank is essential to her claims against Best Buy. As explained above, whether Best Buy's statements describing the credit card promotion were false or misleading can only be judged by reference to the interest obligations in the agreement with Citibank that contains the arbitration clause, making that contract a necessary precondition for her claims against Best Buy.

In sum, the Court concludes that Best Buy is entitled to invoke the arbitration provision in Ms. Stinson's credit card agreement with Citibank under the principles of equitable estoppel. None of Ms. Stinson's arguments to the contrary compel a different result.

### B.    The Arbitration Agreement is Enforceable

In addition to asserting that Best Buy cannot enforce the arbitration provision as a nonsignatory, Ms. Stinson argues that the arbitration agreement cannot be enforced by anyone. Specifically, she asserts that the arbitration clause in her Amended Card Agreement with Citibank is so broad that it would encompass almost any possible claim one could imagine. Because the arbitration provision is overly broad, she contends that applying it would lead to "absurd results." She suggests that such absurdity would either render the contract unenforceable or demonstrate that a binding arbitration agreement was never formed in the first place. [Pl.'s Mem. at 7–

10.] A close examination of the caselaw upon which she relies reveals this argument is without merit.[7]

### Parm v. Bluestem Brands, Inc.

In support of her "absurd results" argument, Ms. Stinson first relies on *Parm v. Bluestem Brands, Inc.*, No. 15-cv-3437 (JRT/BRT), No. 16-cv-624 (JRT/BRT), 2017 WL 1193993 (D. Minn. Mar. 30, 2017). However, even in its discussion of the "absurd results" that might flow from an overly expansive reading of an arbitration clause, *Parm* did not find the arbitration clauses at issue unenforceable.

In *Parm* the arbitration provisions were found in agreements between the consumer plaintiffs and several banks that issued revolving credit to the consumers for purchases from Bluestem's website. 2017 WL 1193993, at *1–4 (describing each plaintiff's credit accounts with the banks). The court observed that it would be an absurd result to hold that the consumers' arbitration agreements with the banks could reach disputes "wholly unrelated" to the credit agreements. 2017 WL 1193993, at *9. As an example, the court stated: "if [the bank's] personnel sexually harassed a [bank] employee, and that employee just happened to also have a revolving credit account under the 2010 Agreement, it would be an absurd result to find that the 2010 Agreement's arbitration provision would compel the employee to arbitrate, at [the bank's] election, an employment action regarding the harassment." *Id.* at *9 n.20.

---

[7]    In its Reply, Best Buy characterizes Ms. Stinson's argument as one of unconscionability. [Def.'s Reply at 3–5.] One of the cases that features prominently in Ms. Stinson's brief, *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), expressed concerns that an overly broad arbitration agreement that raises the specter of "absurd results" could be unconscionable. *Id.* at 504 (noting that the court had concerns that the defendant's "arbitration clause is unconscionably broad"). However, Ms. Stinson does nothing more than obliquely hint at the doctrine of unconscionability. She neither relies upon unconscionability explicitly nor points to evidence that she argues renders the card agreement procedurally or substantively unconscionable. Because Ms. Stinson does not squarely raise this issue, the Court does not address it.

Despite these observations about the reasonable interpretation of the arbitration provision, the *Parm* court did not conclude that the arbitration agreement was unenforceable. Indeed, the court enforced the arbitration provision in large part and held that only some claims asserted by the consumers fell outside of its reach. *Id.* at *9–12 (concluding that certain claims were within the arbitration provisions at issue and others were not). *Parm* provides no support for Ms. Stinson's argument that the arbitration agreement is unenforceable because it is broadly worded. Indeed, if *Parm* stood for the proposition that an arbitration clause must be completely invalidated because one can imagine absurd applications of the contractual language, the outcome of the case would have been quite different—none of the consumers claims would have been sent to arbitration.

### *Wexler v. AT&T Corp.*

Ms. Stinson also relies heavily on *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), to support her argument that the arbitration agreement is unenforceable, but that decision does not carry the weight she places upon it. Eve Wexler received cell phone service from AT&T Mobility, and her service agreement included a broad arbitration clause requiring the parties to arbitrate all disputes "arising out of or relating to any aspect of the relationship between [them], whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." *Id.* at 501. The agreement applied to the service provider's affiliates within the AT&T corporate umbrella. *Id.* at 501–02. Another AT&T subsidiary began placing unsolicited calls to Ms. Wexler relating to an account that she never opened. *Id.* at 502. When Ms. Wexler sued AT&T Corp. for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, AT&T moved to compel arbitration based on the agreement between Ms. Wexler and AT&T Mobility. The court found that the arbitration clause was not enforceable because a reasonable person signing the agreement with AT&T Mobility "would be expressing, at most, an intent to arbitrate disputes connected in some way to the service agreement with Mobility." *Id.* at 504. The court denied the affiliate's motion to compel arbitration because Ms. Wexler's

TCPA claims were not connected in any way to the service agreement with AT&T Mobility. *Id.*

Contrary to Ms. Stinson's position, *Wexler* is of little value in assessing the arbitration clause at issue here. First, it is factually distinct. As explained, Ms. Stinson's claims are inextricably intertwined with her Citibank credit agreement containing the arbitration provision. She agreed to arbitrate all claims that arise out of or relate to her Citibank account, and in this lawsuit she asserts that the terms by which she would be charged interest on that account were misrepresented to her. Unlike the plaintiff's TCPA claims in *Wexler*, which were entirely unrelated to her cell phone service, Ms. Stinson's claims against Best Buy not only arise out of and relate to her card agreement with Citibank, but also depend upon the terms of that agreement directly. Moreover, no part of the *Wexler* decision can be read to hold that an arbitration provision must be invalidated in its entirety simply because it could be read too broadly. Instead, *Wexler* supports the idea that an arbitration provision cannot be applied to require arbitration of claims wholly unrelated to the contract itself, but not that a broadly worded arbitration clause is invalid in all applications. The Court finds that the arbitration provision is enforceable.

### C.    The Claims At Issue Fall Within the Arbitration Clause

Finally, the parties disagree about whether Ms. Stinson's claims against Best Buy are covered by the arbitration provision in the card agreement with Citibank. A federal court deciding whether claims fall within an arbitration provision "construes the clause liberally, resolving any doubts in favor of arbitration and granting the motion 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005)). The Court finds that Ms. Stinson's claims against Best Buy fall within the scope of the arbitration provision.

The arbitration agreement here applies to "any claim, dispute or controversy between [Ms. Stinson] and [Citibank] arising out of or related to [Ms. Stinson's] account." [Montgomery Decl., Ex. 4 at 14.] As described above, Ms. Stinson's claims against Best Buy are inextricably intertwined with her Citibank card agreement. Her fraud, misrepresentation, and statutory consumer protection claims all assert that she was harmed because she purchased appliances using credit, but only after having been deceived about the interest she would pay. These claims arise out of and are related to Ms. Stinson's card agreement with Citibank because they all depend upon the terms by which she was charged interest under that agreement. Therefore Ms. Stinson's claims against Best Buy fall within the arbitration clause because they arise out of or are related to Ms. Stinson's Citibank credit card account. *Cf. Parm*, 2017 WL 1193993, at *13 (finding claims that a non-signatory could compel the plaintiffs to arbitrate under equitable estoppel and those the non-signatory could not divided along the same lines as the claims that fell within the scope of arbitration agreements and those that were outside the agreement).

## V.    Individual Arbitration

Finally, Best Buy argues that an order compelling arbitration of Ms. Stinson's claims should require that she do so on an individual basis. Ms. Stinson does not contest that the provision in the card agreement requires individual arbitration rather than a class arbitration. Instead, she argues only that Best Buy cannot rely on the individual arbitration clause because it is not entitled to enforce the card agreement she entered with Citibank at all. [Pl.'s Opp'n at 11 n.12.]

The Court finds that Ms. Stinson should be compelled to arbitrate her claims on an individual basis. *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) (adopting a presumption that it is for a court to decide whether claims may be handled by class arbitration unless the parties clearly and unmistakably provide in their agreement that an arbitrator is to make any decision about class arbitration). Here, the Amended Card Agreement provides that "[c]laims brought as part of a class action, private attorney general or other representative action can be arbitrated only

20

on an individual basis." [Montgomery Decl., Ex. 4 at 14.] There is no indication that Ms. Stinson and Citibank intended to defer to an arbitrator regarding whether any claims arising out of or related to the card agreement would be subject to class arbitration. In fact, their intent is clearly that no class arbitration would be allowed.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Best Buy's Motion to Compel Arbitration and to Stay Proceedings **[ECF No. 17]** should be **GRANTED**.

2.    Ms. Stinson should be compelled to arbitrate the dispute raised in this action on an individual basis.

3.    This action should be **STAYED** pending the outcome of the arbitration.

Dated: June 26, 2018                    *s/Katherine Menendez*
                                        Katherine M. Menendez
                                        United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).